Per Curiam.
 

 Hughes brought suit against Stump in the Circuit Court of Davidson. The declaration states that in consideration of $800 to be paid by Joseph Bobjack to Elijah Robertson, now deceased, they and each of them agreed, and put their agreement on their part into writing, and subscribed it with their names respectively on the 12th of December, 1787, that Elijah Robertson should make a deed in fee to Bobjack, his heirs and assigns, for ten hundred acres of land within 15 miles of General Green’s survey, to be as good, &c.; avers performance on the part of Bobjack, and that the written agreement was assigned by Bob-jack to the plaintiff, Hughes, and delivered to him, of which Stump had notice. Nevertheless neither of them had made the deed to Bob-jack or to the plaintiff. There is another count similar to this, except that the promise to make the deed is by Stump, in consideration of $300 to be paid to Robertson.
 

 The defendant, Stump, pleaded
 
 non assumpsit
 
 and the statute of liihitations, on which issue was joined. The jury found the issues for the plaintiff, and assessed $600 damages.
 

 The errors assigned are, first, that the court permitted the written agreement without legal proof of its execution; secondly, a refusal to grant a new trial. •
 

 There appears to be two subscribing witnesses to the written agreement, Daniel Rowan and R. Jones, * neither of whom were produced on the trial. Thomas Hickman proved the handwriting of Daniel Rowan, one of the subscribing witnesses, and that he was reported to be dead; that about the year 1787 he knew a man in this county of the name of Jones, who, he understood, lived somewhere over the Mississippi, and had been here for a short time once or twice afterwards. On this evidence the court permitted the plaintiff to prove an acknowledgment by the defendant. Thomas Smith deposed that the paper in question was deposited with him in December, 1787, for safe keeping, by Bobjack; that then it called for ten hundred acres of land; -that witness returned it to Bobjack in June next thereafter, who went to
 
 *586
 
 North Carolina and stayed two or three years, and on his return again deposited the paper with the witness and went to North Carolina. Robertson died shortly after. Bobjack then sent witness a power of attorney to act for him, and in a short time informed the defendant of his power to get the land or its value. The defendant said he was Robertson’s security to convey 1,000 aci’es of land on Duck River to Bobjack; that he wished him to sue Robertson’s executors, as the estate was much involved. About that period wit-: ness frequently heard the defendant say he was security for Robert-, son to Bobjack for 1,000 acres of land, and was afraid he should be obliged to pay it, but the paper itself was not presented to the. defendant. This witness also proved the assignment from Bobjack to the plaintiff. The plaintiff’s counsel then offered to read the paper to the jury, to which the defendant’s counsel objected, because the execution was not sufficiently proved, and because the writing hád the appearance of having been altered. The court overruled the objection, and permitted the paper to be read in evidence.
 

 Alexander Smith deposed that Bobjack told him he had bought eight hundred acres of land from Robertson. * A few days or a few weeks afterwards, he told him he had bought 200 acres more, and that for the whole quantity he was to give a mare, a rifle, and some cash.
 

 , R. Weakley, a witness, deposed that in 1787, land of the description in the writing would sell from 12J to 25 cents per acre ; the most common price was from 18 to 20 cents.
 

 T. Hickman thought it at that time worth from 20 to 25 cents per acre. Both these witnesses thought the paper writing was altered, and the word “ ten,” inserted with ink different from' the rest of the writing.
 

 Thomas Harney deposed that about a year before this suit was commenced, he called on the defendant, at the plaintiff’s request, with the paper writing, which he showed to the defendant, and requested a conveyance of the land.
 

 The defendant said, that when the paper was executed, it was only for eight hundred acres; that he did not sign it for ten hundred ; that there had been an alteration in it, and he would not pay it; that it could not be recovered, and he was sorry for the young men.
 

 On this evidence the court charged the jury, that if they be
 
 *587
 
 lieved the paper writing to have been signed by the defendant, and that there was a subsequent alteration by inserting the word “ ten,” such alteration would destroy the legal remedy ; also, that as the defendant had declared on a promise to convey ten hundred acres of land, an acknowledgment of a promise to convey eight hundred acres did not support the issue or take the case out of the statute of limitations.
 

 After verdict, a new trial was prayed, because the court permitted the paper in question to go to the jury, and because the verdict was (alleged to be) against law and evidence, contrary to the charge of the court, and because the damages were excessive.
 

 * The plaintiff released $ 120. The court refused to grant a new trial, and gave judgment for $480, the residue of the damages assessed. *
 

 The first question is concerning the proof of the writing declared on.
 

 The handwriting of the dead witness, and the 30 years’ absence of the other, without proof of his handwriting, will do, with the additional proof of an admission of execution by the defendant.
 

 The objection is founded upon the practice of this State, as stated in 1 Tenn. Reports, 487. Peake’s Evidence, 104, and the cases there referred to as having occurred in England, New York, and other Atlantic States, show that if one be dead, and the other be proven to have been absent in another country, proof of the handwriting of him that is dead shall be deemed sufficient. The practice of this State should now be changed. It is rapidly becoming a commercial State. Our merchants and planters deal in Orleans, and the farmer in Baltimore, New York, and Philadelphia. To send notes and bonds abroad, to be proved and annexed to depositions and returned, will expose them to much danger of being lost. And where the debt is not large the expense of procuring the deposition will frequently exhaust it. The witness, when called on, may absent himself. There must then be incurred fresh expense and trouble, and this may be often repeated. The delay which this practice unavoidably occasions is intolerable. It is better to let the handwriting of the dead witness be proved, and to deem it sufficient, especially if fortified with proof of the obligor’s handwriting, or of his confession that he signed it. Here is the latter proof:
 
 *588
 
 Stump owned that the paper was executed by him for eight hundred acres, but that it was afterwards altered to ten hundred. This addition to his admission is repelled by his former acknowledgments to Smith, that he was surety for Robertson for ten hundred acres. His subsequent * declarations upon this point cannot do away his former. The whole testimony, taken together, proves that he executed for ten hundred acres; therefore the execution is well proved, and the debt being admitted to be unsatisfied within one year before the commencement of the action, takes the case out of the act of limitations ; for, upon such admission, the law will imply a promise to pay, although he says he will not pay the whole; or even if he says he will not pay any part, for a reason which only extends to part, if that be not a good reason for his denial as to any part; as here, being refuted by his former admissions.
 

 .The Circuit Court acted correctly in refusing a new trial; for there is not a wrong verdict found, in pursuance of wrong direction of the judge ; nor a finding against law, contrary to his directions, and also against the justice of the case. But they have found agreeably to his charge, and to the law, and to the justice of the case, after exercising their judgment upon the evidence submitted to their deliberations, which leading to two different results, they have fixed upon that one which if they did believe, he directed them to find as they have done.
 

 The proof would be sufficient if the handwritings of both witnesses were proved without proving the’handwriting of the obligor. B. & P. 360; 2 East, 183. The handwriting of an instrumentary witness may be proved either when he is dead, or resides beyond the limits of the State, or is to remain there on business until after the trial.
 
 Affirm the judgment.
 

 See
 
 Sims
 
 v.
 
 Sims,
 
 5 Hum. 370;
 
 Harrel
 
 v.
 
 Ward,
 
 2 Sneed, 610;
 
 McDonald
 
 v.
 
 McDonald,
 
 5 Yer. 307;
 
 Crockett
 
 v.
 
 Crockett,
 
 Meigs, 95;
 
 Hill
 
 v.
 
 Nall, 2
 
 Tenn. 242;
 
 Haggard
 
 v.
 
 Mayfield,
 
 5 Hay. 121;
 
 McCully
 
 v.
 
 Malcom,
 
 9 Hum. 187;
 
 Allen
 
 v.
 
 State,
 
 3 Hum. 367; King’s Digest, 5969-73, 6074.